UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERICK NOE O.U.,[1]<br>Petitioner,<br>v.<br>TODD BLANCHE, et al.,<br>Respondents. | No. 1:26-cv-07898-TLN-JDP<br>A# 205-456-973<br>**RELEASE ORDER** |

This matter is before the Court on Petitioner Erick Noe O.U.'s ("Petitioner") Petition for Writ of Habeas Corpus. (ECF No. 1.) Respondents filed an answer. (ECF No. 6.) Petitioner, through appointed counsel, filed an Amended Petition for Writ of Habeas Corpus ("Amended Petition"). (ECF No. 9.) Respondents oppose the Amended Petition on the same grounds as in their original answer. (ECF No. 12.) For the reasons set forth below, the Court GRANTS the

---

[1] The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf. The Court spells Petitioner's first name as it appears in the Amended Petition. (ECF No. 9 at 1.)

Amended Petition and orders Petitioner's IMMEDIATE RELEASE.

## I. Factual and Procedural Background

This matter arises out of Petitioner's challenge to his civil immigration detention. Petitioner is a noncitizen who entered the United States in April 2012. (ECF No. 1 at 2; ECF No. 6-4 at 4; ECF No. 9 at 6.) Immigration authorities initiated expedited removal proceedings and later released Petitioner on his own recognizance. (ECF No. 1 at 2; ECF No. 6-4 at 4; ECF No. 9-1 at 12.) In July 2018, an immigration judge entered an order of removal against Petitioner but granted Petitioner's application for withholding of removal to his country of citizenship. (ECF No. 1 at 2; ECF No. 6-4 at 24.) Petitioner did not appeal the immigration judge's order. (ECF No. 6-1 at 2; *see* ECF No. 9 at 11 (indicating time to appeal expired August 17, 2018).) Since 2018, Petitioner has applied and been approved for work authorizations, the most recent of which expires April 29, 2029. (ECF No. 6-2 at 3; ECF No. 6-4 at 26.) In 2019, Petitioner fell off a scaffold at work and suffered a traumatic brain injury. (ECF No. 9 at 7.) As a result of his injury, Petitioner experiences seizures and, prior to his detention, received ongoing treatment for the effects of his fall and other chronic medical conditions. (*Id.* at 7–8, 11.) Petitioner has no criminal history. (ECF No. 6-2 at 3.) Petitioner submits he complied with all Immigration and Customs Enforcement ("ICE") reporting requirements and never missed an appointment. (ECF No. 9 at 6.)

More than eight years after the immigration judge entered Petitioner's order of removal, around August 10, 2026,[2] Petitioner was arrested by ICE agents during a vehicle stop. (ECF No. 9 at 8.) ICE did not explain why it was detaining Petitioner, provide Petitioner an opportunity to

---

[2] The parties dispute the date of Petitioner's arrest and detention. (*See* ECF No. 6-1 at 2 (declaring Petitioner was taken into custody on August 12, 2026, but acknowledging the Form I-213 of the arrest contains a "minor scrivener's error" indicating the arrest occurred on July 1, 2026); ECF No. 9 at 8–9 (claiming Petitioner was arrested on August 10, 2026, and remembers spending the next day — his birthday — in ICE custody).) Although the precise date of Petitioner's arrest and detention does not affect the Court's analysis, in light of the inconsistency in Respondents' records, the Court assumes without deciding the date in Petitioner's recounting is correct.

respond to the reasons for his detention, or provide Petitioner a notice of custody determination.[3] (ECF No. 9-1 at 7.)

Respondents now seek to remove Petitioner to Mexico rather than his country of citizenship, which is the country listed in Petitioner's order of removal. (ECF No. 6-1 at 2–3; *see* ECF No. 6 at 2.) Petitioner states that he did not receive a written notice of third-country removal despite an ICE officer asking him in the detention facility to sign papers agreeing to go to Mexico. (ECF No. 9-1 at 7.) Although Petitioner says he informed ICE he is afraid of being removed to Mexico, Petitioner has not received an interview to assess his fear claim.[4] (ECF No. 9 at 9; ECF No. 9-1 at 7.) An ICE deportation officer declares ICE is "currently exploring third country removal options" for Petitioner. (ECF No. 6-1 at 2.) Petitioner requested a bond hearing in September 2026 but withdrew his request when the immigration judge told him the judge did not have jurisdiction to give Petitioner bond and would deny Petitioner's request. (ECF No. 9-1 at 7; *see* ECF No. 6 at 2 (noting hearing scheduled September 14, 2026).)

Petitioner has now been detained for three months. He alleges his civil immigration detention violates applicable statutes and is unconstitutional. (ECF No. 9 at 11–21.)

## II. STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004)

---

[3] On September 29, 2026, the Court ordered Respondents to provide "any custody determinations, warrants, or notices" with their response to the Petition. (ECF No. 4.) Respondents did not provide any record of a custody determination. (*See* ECF Nos. 6 to 6-4.) Nor do they provide an explanation for failing to provide the record or argue such process was provided. (*See* ECF No. 6-1 at 2 (declaring that ICE "conducted an initial custody determination and decided to detain petitioner" without attesting ICE provided Petitioner documentation of that custody determination).) Therefore, the Court reasonably infers Petitioner was detained without a custody determination form.

[4] The parties dispute whether Petitioner has expressed fear of removal to Mexico. (*Compare* ECF No. 6 at 2 ("Petitioner has not made any claim that he has a fear of removal to Mexico."), *with* ECF No. 9 at 9 ("When ICE told [Petitioner] that it intended to remove him to Mexico, he said he was afraid to go there."); ECF No. 9-1 at 7 ("I told the officer that I am afraid to go to Mexico.").) Because the Court's analysis does not turn on this fact, the Court need not determine whether Petitioner claimed fear of removal to Mexico prior to the instant proceedings.

(citing U.S. Const., art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. ANALYSIS

Petitioner argues Respondents lack statutory authority to detain Petitioner, Respondents revoked Petitioner's release in violation of applicable regulations, and Respondents re-detained Petitioner without due process. (ECF No. 9 at 11–17.) Respondents contend they detained Petitioner under 8 U.S.C. § 1231(a)(6);[5] Petitioner's release was not improperly revoked because Petitioner was out of custody on an order of recognizance, not an order of supervision, at the time of his arrest; the length of Petitioner's detention makes it presumptively reasonable under *Zadvydas*; and Petitioner's failure to cooperate with removal to a third country mandates his detention. (ECF No. 6 at 1–3.)

The Court considers Petitioner's procedural due process claim and the likelihood of his removal in the reasonably foreseeable future in turn.[6]

### A. Procedural Due Process

---

[5] Unless otherwise specified, subsequent references to statute refer to title 8 of the United States Code.

[6] Because the Court finds Respondents' violations of applicable detention procedures and Petitioner's showing that removal is not significantly likely to occur in the reasonably foreseeable future sufficient to grant the Amended Petition, the Court, in the interest of judicial economy, does not address Petitioner's arguments that his detention has become punitive and that Respondents attempt to remove Petitioner to a third country without affording him notice and an opportunity to seek protection. (ECF No. 9 at 18–21.) For the same reason, the Court does not address Respondents' argument that the government's third-country removal policy is lawful. (ECF No. 6 at 2.)

Petitioner argues Respondents lack statutory authority to detain him because he was not detained during the ninety-day removal period after his order of removal became final, as would have permitted Respondents to continue detaining him under § 1231(a)(6). (ECF No. 9 at 11–13.) Petitioner further argues Respondents revoked his release without following applicable regulations in 8 C.F.R. § 241.13 and 8 C.F.R. § 241.4(*l*). (*Id.* at 14–16.) Respondents contend Petitioner's detention falls under § 1231(a)(6) because Petitioner is subject to a final order of removal and the government seeks to remove him, and they argue the procedures in 8 C.F.R. § 241.13 and 8 C.F.R. § 241.1(*l*) do not apply because Petitioner was never released on an order of supervision. (ECF No. 6 at 1.)

The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas*, 533 U.S. at 693. These due process rights extend to immigration proceedings and detention. *Id.* at 693–94.

Courts examine procedural due process claims in two steps. First, a court asks whether there exists a protected liberty interest under the Due Process Clause. Second, the court examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

*i. Liberty Interest*

As to the first step, the Court finds Petitioner has a protected liberty interest. "[F]reedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" *Hernandez*, 872 F.3d at 993 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *Rico-Tapia v. Smith*, 806 F. Supp. 3d 1166, 1182 (D. Haw. 2025). A person's liberty interest may increase over time. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the government's actions in allowing petitioner to

remain in the community for over five years strengthened petitioner's liberty interest).

Here, Petitioner gained a protected liberty interest during his fourteen years living freely in the United States. (ECF No. 1 at 2; ECF No. 9-1 at 5.) After his initial release on an order of recognizance in 2012, Petitioner obtained work authorizations, maintained employment, was active in his faith community, and established relationships with medical providers for treatment of his chronic medical conditions. (ECF No. 6-2 at 3; No. 6-4 at 26; ECF No. 9-1 at 5–6.) He continued to live freely in this way even after he was ordered removed in 2018. (ECF No. 1 at 2.) He has no criminal record. (ECF No. 6-2 at 3.) In consideration of the amount of time Petitioner was permitted to live freely in this country and the life he appears to have made in that time, the Court finds Petitioner has a substantial interest in his continued freedom protected by the Fifth Amendment. *See Hernandez*, 872 F.3d at 993; *Zadvydas*, 533 U.S. at 693.

The fact that Petitioner has a final order of removal does not alter this Court's analysis. As a preliminary matter, "the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." *Hernandez*, 872 F.3d at 981. Thus, even if ICE had discretion to arrest and detain Petitioner pursuant to the final order of removal, its exercise of that discretion must comport with due process. *See Garcia v. Andrews*, No. 1:25-cv-01006 JLT SAB, 2025 WL 2420068, at *9 (E.D. Cal. Aug. 21, 2025) (finding statutory authority to revoke bond or parole "does not mean that DHS may exercise its discretion in a manner that is inconsistent with constitutional requirements.").

Further, Respondents are incorrect to rely on § 1231(a)(6) as the basis for Petitioner's re-detention. Respondents appear to claim § 1231(a)(6) permits ICE to arrest and re-detain released noncitizens without notice or process at any time after an order of removal has been final for more than 90 days. (ECF No. 6 at 1 (arguing § 1231(a)(6) applies because "Petitioner is subject to a final order of removal and the government seeks to remove Petitioner to a third country willing to accept him").) But § 1231(a)(6) "isn't a free-roaming right to arrest and detain people any time [ICE] sees fit[.]" *Diallo v. Joyce*, 817 F. Supp. 3d 202, 205 (S.D.N.Y. 2025). Rather, § 1231(a)(6) allows for the *continued* detention, not re-detention, of certain noncitizens after the 90-day removal period. *Id.* (citing *Zadvydas*, 533 U.S. at 683 ("After entry of a final removal order

and during the 90–day removal period, however, [noncitizens] must be held in custody. § 1231(a)(2). Subsequently, as the post-removal-period statute provides, the Government 'may' *continue to detain* a[] [noncitizen] who remains here or release that [noncitizen] under supervision. § 1231(a)(6).") (emphasis added)). That § 1231(a)(6) applies to continued detention and not re-detention is clear by the terms of its own text, the wider statutory scheme, and relevant regulations. *Id.* at 206 (finding the "and, if released" language of § 1231(a)(6) reflects that the statute applies to individuals already in detention, the government's reading would override § 1231(a)(3), and the regulations that operationalize § 1231(a)(6) refer to "continued detention").

Instead, once the 90-day removal period expires, if a non-citizen is not in custody, they are subject to supervision under § 1231(a)(3), not detention. *See Alva v. Kaiser*, No. 25-CV-06676-RFL, 2025 WL 2419262, at *3 (N.D. Cal. Aug. 21, 2025) ("As mandated by Congress, the default status after the 90-day removal period is therefore release on conditions, not detention."); *see also Diaz v. Wofford*, No. 1:25-CV-01079 JLT EPG, 2025 WL 2581575, at *4 (E.D. Cal. Sept. 5, 2025) (finding that where a noncitizen's removal order "became final long ago," "he is no longer even arguably subject to mandatory detention under § 1231(a)," but is instead subject to supervision under § 1231(a)(3)).

The Court therefore rejects Respondents' argument that Petitioner can be re-detained under § 1231(a)(6) without any additional procedures, regardless of whether he was formally placed on an order of supervision. Petitioner has a liberty interest in his continued freedom protected by the Due Process Clause.

*ii. Process Required*

Having found a protected liberty interest, the Court examines what process is necessary to ensure any deprivation of that interest accords with the Constitution. The Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

As to the first *Mathews* factor — Petitioner's private interest — Petitioner has a substantial private interest in remaining free from detention. Petitioner was released from immigration custody fourteen years ago, has work authorization, has been employed, and developed strong ties to his faith community and medical providers. (ECF No. 6-4 at 26; ECF No. 9-1 at 5–6.) Despite this, Petitioner has now been detained for three months without prior notice or an opportunity to respond to the reasons for revocation of his release. These facts weigh in favor of finding Petitioner's private interest has been impacted by his detention. *See Doe*, 787 F. Supp. 3d at 1094 (finding similarly).

As to the second *Mathews* factor — the risk of erroneous deprivation — the Court finds the risk here is considerable where Petitioner has received virtually no procedural safeguards. *See A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO (HC), 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025), *report and recommendations adopted*, No. 1:25-cv-00107-KES-SKO (HC), 2025 WL 1808676, at *1 (E.D. Cal. July 1, 2025) (finding similarly). Because Petitioner has a final order of removal, the revocation of his release is governed by 8 C.F.R. § 241.4 and 8 C.F.R. § 241.13. *Diaz*, 2025 WL 2581575, at *4. These regulations allow ICE to re-detain a noncitizen "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the [non-citizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). Upon revocation, the noncitizen must "be notified of the reasons for the revocation of his or her release" and "afforded an initial informal interview promptly after his or her return to [ICE] custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. §§ 241.4(*l*)(1), 241.13(i)(3). Neither process was followed here.[7] *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) ("ICE, like any agency, 'has the duty to follow its own federal regulations.'" (quoting *Haoud v. Ashcroft*, 350 F.3d 201, 205 (1st Cir. 2003))). As Petitioner was denied procedural safeguards to ensure his re-detention was justified,

---

[7] The custody re-determination hearing scheduled for September 14, 2026, that Petitioner requested to withdraw does not change this analysis. (ECF No. 6 at 2.) A custody re-determination hearing is not "an initial informal interview" as required by 8 C.F.R. § 241.4(*l*)(1), and even if it was, a September 14, 2026 hearing would not be "promptly after" Petitioner's re-detention, which commenced more than a month earlier.

there is a serious risk he is being erroneously deprived of his liberty.

As to the third *Mathews* factor, the government's interest in detaining Petitioner without procedural safeguards is negligible. Respondents have put forth no compelling interest to support arresting and re-detaining Petitioner without notice or an informal interview. (*See* ECF No. 6.) There is no indication on the record that circumstances have changed such that Petitioner's removal to his country of citizenship or a third country is imminent. (*See id.*) Further, the cost and time of procedural safeguards are minimal. Notice and interviews are routine processes for Respondents, and any administrative burden in providing such process prior to re-detention (if justified) would be minimal, especially when compared to the high fiscal burden of detaining Petitioner. *See Hernandez*, 872 F.3d at 996 ("The costs to the public of immigration detention are 'staggering[.]'"). Therefore, the Court can find no legitimate interest for Respondents to continue detaining Petitioner.

On balance, this Court finds the *Mathews* factors demonstrate Petitioner was entitled to notice of the reasons for his re-detention and a prompt opportunity to respond to those reasons. Respondents did not provide either. Accordingly, the Court finds Respondents violated Petitioner's Fifth Amendment right to due process.

B. <u>Substantive Due Process</u>

The Court next considers whether Petitioner's detention is unconstitutionally prolonged under *Zadvydas* based on the likelihood Petitioner will be removed in the reasonably foreseeable future. In *Zadvydas*, the United States Supreme Court considered prolonged immigration detention under § 1231(a)(6). 533 U.S. 678 (2001). The Court recognized a presumptively reasonable six-month period of detention to effect removal after an order of removal becomes final. *Id.* at 701. As with all presumptions, the *Zadvydas* presumption of reasonableness is rebuttable. "[O]nce the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the [g]overnment must respond with evidence sufficient to rebut that showing." *Id.* "[F]or detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* "[O]nce removal is no longer reasonably

foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.

Respondents argue they benefit from the *Zadvydas* presumption because Petitioner has not been detained for six months. (ECF No. 6 at 2.) However, Petitioner has sufficiently rebutted the presumption and provided good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future. Since 2018, Petitioner has been subject to a final but withheld order of removal to his country of citizenship. (ECF No. 6-4 at 24.) Although Respondents appear to intend to remove Petitioner to Mexico, they provide no evidence indicating Mexico would be willing to accept Petitioner. (*See* ECF No. 6.) It is recognized that Mexico accepts only noncitizens who are willing to be removed to Mexico, *see Ruiz-Acosta v. Cent. Valley Annex*, No. 1:26-cv-04371-DAD-JDP (HC), 2026 WL 1846727, at *3 (E.D. Cal. June 26, 2026), and Petitioner has refused to sign papers consenting to removal to Mexico, claiming in the Amended Petition he fears removal to Mexico (ECF No. 9 at 9; ECF No. 9-1 at 7). Thus, Petitioner has made a sufficient showing that he is not significantly likely be removed either to Petitioner's country of citizenship, with respect to which Petitioner has been granted withholding of removal, or to Mexico. *See Perez Canet v. Blanche*, No. 2:26-cv-00223-APG-NJK, 2026 WL 1091763, at *3 (D. Nev. Apr. 22, 2026) (finding similarly).

Respondents do not provide any evidence to the contrary. An ICE deportation officer declared in support of Respondents' position that ICE "is currently exploring third country removal options for petitioner and has exercised diligence in pursuing removal." (ECF No. 6-1 at 2.) Yet, Respondents provide no evidence of efforts to remove Petitioner to Mexico or another third country beyond unsuccessfully seeking consent from Petitioner. (*Id.* at 2–3 ("Petitioner has refused to sign the documents and has indicated he will not voluntarily go to Mexico.").) Respondents have not presented evidence they obtained a travel document to Mexico, they do not identify the policies or procedures for removal to Mexico, nor do they reference an agreement that Mexico has agreed to accept Petitioner. (*See id.*; ECF No. 6.) Mere exploration of options for third-country removal falls far short of a showing that removal is significantly likely in the reasonably foreseeable future. There is thus no evidence that Petitioner's removal to any country is reasonably foreseeable as *Zadvydas* requires for continued detention to be authorized.

Respondents argue that Petitioner's period of detention should be extended because Petitioner's refusal to consent to removal to Mexico undermines his showing on foreseeability of removal, but they "acknowledge this Court has routinely rejected that position." (ECF No. 6 at 2.) Respondents contend that Petitioner's failure to agree to be removed to a third country mandates further detention until Petitioner relents. (*Id.*) But, as Respondents concede (*id.*), this District and Court routinely reject such argument regarding "failure to cooperate" with removal to a third country because there is no obligation for such cooperation. *See Ramirez-Cespedes v. Chestnut*, No. 1:26-cv-5506-TLN-JDP, 2026 WL 2280956, at *3 (E.D. Cal. Aug. 7, 2026) (citing *Obando Vargas v. Blanche*, No. 1:26-cv-05343-DAD-AC (HC), 2026 WL 2056618, at *2 (E.D. Cal. July 16, 2026) (rejecting respondents' argument that petitioner may be detained indefinitely "because [he] is not agreeing to voluntarily depart to a country he is not from and is under no legal obligation to go to")), *report and recommendation adopted sub nom. Walfrido R.C. v. Chestnut*, No. 1:26-cv-5506-TLN-JDP, 2026 WL 2413519 (E.D. Cal. Aug. 18, 2026); *Ruiz-Acosta*, 2026 WL 1846727, at *3.

In any event, the mere possibility the Petitioner may someday agree to removal to Mexico is not sufficient evidence to rebut Petitioner's showing that removal is not reasonably foreseeable. The parties are at an impasse. Petitioner refuses to agree to removal to Mexico, and Respondents nevertheless persist in considering removal to Mexico as their sole articulated option for third-country removal. Thus, Petitioner's continued detention is unreasonable because there is no foreseeable end to his detention in the future. *See Zadvydas*, 533 U.S. at 701.

On the record before this Court, Petitioner's removal to any country is not significantly likely in the reasonably foreseeable future. Therefore, his continued detention, even if it fell within § 1231(a)(6)'s ambit as Respondents contend, is unlawful. *Id.* at 699.

## IV. CONCLUSION

Accordingly, the Amended Petition for Writ of Habeas Corpus (ECF No. 9) is GRANTED. Further, IT IS HEREBY ORDERED:

1. Respondents must IMMEDIATELY RELEASE Petitioner Eric Noe U.A. (A# 205-456-973) from custody under an order of supervision. At the time of release,

Respondents must provide a copy of this Order to Petitioner and return all of Petitioner's documents and possessions. Respondents must file a **notice of compliance** with this provision within two days of this Order.

2. Respondents are ENJOINED from re-detaining Petitioner absent a travel document to the country of removal and compliance with statutory and constitutional protections, including a minimum of seven-days' pre-deprivation notice and strict compliance with the requirements of 8 C.F.R. §§ 241.4(*l*), 241.13(i).

3. Respondents are further ENJOINED from removing Petitioner to a third country until they first provide a minimum of ten-days' notice of such intent and a meaningful opportunity to assert a fear-based claim for relief from removal. If Petitioner asserts a fear-based claim, Respondents must provide him a meaningful opportunity to be heard before an immigration judge prior to removal.

4. Petitioner's Motion for Temporary Restraining Order (ECF No. 2) is denied as moot.

5. The Clerk of Court is directed to serve this Order on **Central Valley Annex**, enter judgment in favor of Petitioner, and close this case.

IT IS SO ORDERED.

DATE: November 16, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE